# STATE OF NORTH DAKOTA, Respondent, v. FRANK SIBLA, Appellant.

## (179 N. W. 656.)

**Bastards — proceedings may be commenced in county of defendant's residence.**

1. A bastardy proceeding may be commenced in the county of defendant's residence although the complainant resides in another county.

**Bastards — instruction as to purpose of statute held prejudicial error.**

2. In a bastardy proceeding, where the trial court, in its instructions to the jury, has stated that the purpose of the statute was to determine who was the father of the bastard child, with the object, and as stated in the law, when a person is found by the jury to be the father of a bastard child that judgment be entered requiring him to assist the mother in the care and education of the child until the child is able to do so himself; and where, upon a review of the entire record in connection with newly discovered evidence presented upon the motion for a new trial, it appears that such instruction may have influenced the jury in arriving at its verdict, it is *held* that such instruction is prejudicial error.

Opinion filed October 1, 1920.

Bastardy proceedings in Morton County, *Hanley, J.*

From a judgment and order denying a new trial the defendant has appealed.

Reversed and new trial ordered.

*Sullivan & Sullivan,* for appellant.

"The sole and only question for the jury to determine is whether or not the defendant is the father." People v. Welch, 143 Ill. App. 191; Mann v. State (Wis.) 112 N. W. 38.

*L. H. Connolly,* State's Attorney, for respondent.

The purpose of a proceeding in bastardy, such as this, is to compel the father of the illegitimate child to assist in supporting the fruits of his immoral act, and to indemnify the public against the burden of supporting the child. Stahl v. State (Kan.) 74 Pac. 238.

BRONSON, J. *Statement.*—This is an appeal by the defendant from a judgment in a bastardy proceeding, and from the order of the trial court denying a motion for a new trial. The jury found the defendant

46 N. D.—22.

to be the father of the bastard child of the complainant. In the record it appears that the complainant is about seventeen or eighteen years old and unmarried. She testifies that on July 21, 1918, the defendant had intercourse with her at the home of the defendant, where he lived with his father and mother; that the defendant was the father of the baby boy born to her on April 16, 1919, at the hospital in Bismarck. That she had no other sexual intercourse with him; that she had previously had sexual intercourse while in Canada, but that she had had no acts of sexual intercourse during the months of June, July, and August, 1918. That prior to June 1, 1918, she was living in Canada; from that time until April 11, 1919, she lived in Morton county; since that time she has resided in Bismarck. A doctor, called as an expert, testified that the period of pregnancy is about 280 days, with a variation period of thirty days either way. That a woman who gave birth to a child on April 16, 1919, may have become pregnant in June, July, or August, 1918. The complainant further testified that on the evening of July 4th, at Glen Ullin, she was not with a boy that evening; that she was with one Thresa Duricheck all that evening. That she was not with any boy that evening excepting when they went to see some children, when one Zeigler was with her and her sister. The defendant in his testimony denied any act of sexual intercourse with the complainant on July 21, 1918, or at any other time. He testified that the complainant was with Nick Zeigler that day. Thresa Duricheck testified that on the evening of July 4th, while she was sitting in a car talking with a man, in front of her house, the complainant came along with another fellow, passed her house, and they walked down towards a mill. She sat there about an hour in the car, but did not see them come back; that it was dark down towards the mill, with no street lights.

In the instructions of the court to the jury the court stated:

"This action is brought under the laws of the state of North Dakota, under what is known as the Bastardy Statute, and that statute was passed for the purpose of cases like this, cases of this kind, to determine who is the father of the bastard child, with the object, and as stated in the law, when a person is found by a jury to be the father of a bastard child, that judgment is entered requiring him to assist the mother in the care and education of the child until the child is able to do so himself. That is the purpose of this proceeding."

Later the defendant made a motion for a new trial based, among other grounds, upon newly discovered evidence. Among the affidavits of such newly discovered evidence, one Zeigler swears that on the 4th of July, 1918, in the evening he went riding in an automobile with complainant, and while out riding had sexual intercourse with her. The defendant specifies many errors in the instructions and rulings of the trial court, and in the action of the trial court in overruling its motion for a new trial upon the ground of newly discovered evidence.

The principal contentions of the defendant are that the action should be dismissed for the reason that the district court of Morton county had no jurisdiction on account of the plaintiff being a resident of Burleigh county; that the trial court prejudicially erred in giving the instructions above stated and in refusing to grant a new trial upon the newly discovered evidence submitted.

*Decision.*—We are satisfied that the district court of Morton county had jurisdiction. A bastardy proceeding partakes both of a civil and criminal character, and proceedings may be instituted in any county of the state. State v. Long, 19 N. D. 679, 683, 125 N. W. 558. We are further satisfied that the trial court did not err in refusing to grant a new trial upon the grounds of newly discovered evidence, for the reason that the defendant failed to supplement the newly discovered evidence so submitted by a showing of due diligence to discover such testimony before the trial, and of its discovery since the trial.

However, the testimony of the plaintiff, which was all that was offered for the state, is in many respects somewhat discredited by the testimony adduced in behalf of the defendant, and particularly upon the showing made upon a motion for a new trial. In view of the state of this record the instructions so given may possibly have received consideration by the jury in determining the paternity of the child, upon the ground that the measure of the responsibility was a judgment only which required the defendant to assist in the care and education of the child. The statute, § 1049, Comp. Laws 1913, provides that if the defendant is adjudged to be the father the court shall render such judgment as may seem necessary to secure, with the assistance of the mother, the maintenance and education of the child until such time as the child is likely to be able to support itself, and such judgment shall also require the defendant to secure the payment thereof by an under-

taking, and in default thereof the defendant shall be committed to jail until discharged according to law. Upon the whole record, therefore, in this case, and in the interests of arriving at substantial justice by remanding this case for a new trial, this court is of the opinion that such instructions should be considered, for the purposes of this case, prejudicial error. See People ex rel. Weese v. Welsh, 143 Ill. App. 191, 194; Menn v. State, 132 Wis. 61, 112 N. W. 38; 1 Blashfield, Instructions to Juries, § 412. A judgment in bastardy not only serves the purpose of requiring and enforcing through confinement assistance by the father for the support and education of the child, but it also may serve to determine for the state and for the child the paternity of such child. See chap. 70, Laws 1917. A new trial is ordered.

GRACE and BIRDZELL, JJ., concur.

ROBINSON, J. I concur in the result, but hold the instruction was not erroneous.

CHRISTIANSON, Ch. J. While I believe it would have been better if the instruction referred to in ¶ 2 of the syllabus had not been given, it is difficult to understand how honest, intelligent, and reasonable men could have been misled thereby.

Although I am unable to find any specific ruling that can be said to be prejudicial to the defendant, a careful examination of the record rather impresses me with the view that the interests of justice will probably be best subserved by ordering a retrial of the action.